The Chancellor.
The original bill was filed to foreclose a mortgage, given by James Whyte and wife to Richard H. Hopkins upon a lot in Jersey City, bearing date on the twenty-fifth of June, 1857, to secure the payment of a note of even date, given by J. W. Carhart & Co. to Hopkins, for $3500, at eighteen months, with interest. The firm of Oar-hart & Co. was composed of John W. Carhart, of Milwaukie, in the state of Wisconsin, and James Whyte, the mortgagor. The mortgage was duly acknowledged, and on the twelfth of January, 1858, was recorded in the clerk’s office of the county of Hudson. On the twenty-fifth of April, 1859, the note and mortgage were, for the consideration of $3000, transferred by assignment from Hopkins to the complainant. On the fifteenth of March, 1858, Whyte and wife conveyed their interest in the mortgaged premises to Andrew Crawford. The bill charges that this conveyance was made to Crawford without consideration, and that he holds the pro *281 perty as trustee for Whyte. After the conveyance of the mortgaged premises to Crawford, judgments wore recovered against Whyte. Among others, a judgment was recovered, on the twenty-eighth of March, 1859, in the Supreme Court, by Oourtland Palmer and Frederick T, Wallace, against Whyte and Carhart for $4536.23, upon which a writ of fieri facias issued, and by virtue thereof, on the third of January, 1860, the mortgaged premises were sold and conveyed, by the sheriff of Hudson, to Archibald K. Brown. It is admitted that, on the tenth of June, 1858, $501.70 were paid on account of the mortgage debt. The bill claims that the balance of the debt is due to the complainant.
Andrew Crawford, the owner of the equity of redemption, answered the bill, and subsequently filed a cross-bill for dis ■ covery and relief, to which an answer has been filed. The causes are now brought to. hearing upon the pleadings and proofs.
There is no denial of the validity of the mortgage nor of the existence and bona fides of the mortgage debt. They are admitted.
The mortgage was given by Whyte and wife to secure a note for $3500, given by J. W. Carhart & Co. (of which firm Whyte was partner) to Bichard PI. Hopkins, the mortgagee. Carhart & Co., at the date of the mortgage, were engaged in business at Mackford, in the state of Wisconsin, and owned real estate there, which was encumbered with debts of Car-hart, contracted before Whyte became his partner. In order to procure an extension of that indebtedness for eighteen months, application was made to the firm of Hopkins, Hays, Palmer & Co. (of which firm Hopkins, the mortgagee, was a partner) for their notes, amounting to $3500, offering in exchange the note of Carhart & Co. for the like amount, secured by mortgage upon the lands at Bockford. This proposition was declined, except Whyte would give, as additional security for the loan, a mortgage upon his individual real estate in Jersey City. This was consented to, and the mortgage in question was executed by Whyte and wife, as addi *282 tional security for the payment of the $3500 note of the firm of Oarhart & C'oj., made to Hopkins individually, hut for the use of the firm of Hopkins, Hays, Palmer & Go.
The first ground of defence is, that the mortgage was executed by Whyte and wife,, and was accepted by Hopkins with intent merely to- secure the balance which might remain due and unsatisfied upon the note of Oarhart & Go., after- the sale and appreciation, of the Wisconsin lands, to the payment thereof; and that it was expressly agreed that no- part of the mortgage debt should he a lien upon the Jersey Oity lot until the sale- and appropriation of the Wisconsin land's toi the payment of the debt, and then only for the balance which should remain unpaid after such appropriation.
There- is an entire failure of evidence to prove this agreement. The- mortgage contains no allusion to such a contract. It is in the usual form, and purports to be a security for the payment of the entire debt due upon the note. Hopkins, the mortgagee,, and the- members of his firm who were parties to the transaction, and who had any participation in or knowledge of the terms of the arrangement, expressly deny the existence of any such agreement.. The only evidence offered in proof of the agreement is the testimony of Whyte, the mortgagor, and his partner Oarhart, for whose debt the mortgage was given. Their- testimony affords very unsatisfactory evidence of the existence of the agreement. Fairly considered, it proves no more- than the simple fact that the mortgage was given and accepted as "additional security” to the Mackford lands- for the payment of the mortgage debt. As between Oarhart and Whyte, it is clear that in equity the Mackford lands belonging to the firm should be applied to the payment of the mortgage before resorting to the individual lauds of Whyte. And this may naturally have been inferred by them to be the effect of the arrangement. But the evidence is far from satisfactory that the mortgagee was a party to any such contract. Admitting the competency-of the parol evidence offered to prove a contract in conflict with the terms and effect of the mortgage, it is clear that the *283 evidence, to be available, should establish the existence and terms of the contract past all doubt. This the evidence fails to accomplish.
The second ground of defence is, that if no agreement to that effect was made between the parties, yet "Whyte, the mortgagor, or his grantee is entitled, upon principles of equity, to compel a sale of the Wisconsin lands, and an appropriation of the proceeds towards the satisfaction of the mortgage debt before recourse is had to the mortgaged premises. This ground of defence rests upon the assumption that Whyte, in giving the mortgage, occupied the position of a surety merely for the individual debt of his partner Carhart. I think he is not entitled to claim the advantage of that relation. The mortgage was given by Whyte to secure a partnership note of Carhart & Co., of which firm Whyte was a partner. Primarily, therefore, the mortgage was given to secure Whyte’s own debt, and for which he, as a member of the firm, was personally liable. But it is said that the partnership note was given to raise money to pay the individual debt of Carhart, one of the partners, and that that fact was known to tbe mortgagee. But, as between the borrower and lender, that did not convert Whyte into a security for his partner. The money for which the mortgage was given was in fact loaned to the firm of Carhart & Co., and became a debt of that firm, for which Whyte was personally liable. And although the debt for which the loan was made and the mortgage given was originally the individual debt of Carhart, yet it was an encumbrance upon the Mackford lands, which were the property of the firm of Carliart & Co., though the legal title was standing in the name of a son of Carhart, who was a former partner of his father. It appears, by the evidence, that the claim of McBride for the extension, of which the $3500 was advanced to Carhart Co., was an encumbrance upon the lands at Mackford. The loan was therefore in fact made for the benefit of the firm, and was designed to relieve their property from the pressure of a claim then overdue, and which was pressing for pay- *284 meat.- In' the payment of that debt, Whyte, as a partner of the house of Oarhart & Oo., was directly and personally in terested. The mortgage, then, was given not only primarily for a debt of the house of Oarhart & Oo., for which the mortgagor was personally liable, but was made for the purpose of extinguishing a debt of one of the partners which was an encumbrance upon the partnership property, and the extinction of which enured to the benefit of the mortgagor. Under such circumstances, Whyte, the mortgagor, cannot claim the character of surety, and as such to stan,d in the shoes of the mortgagee.
But there is another, and equally serious difficulty in giving to the defendant the benefit of the defence, of which he seeks to avail himself. It is clear that this court cannot compePa sale of the Wisconsin lands, and an appropriation of the proceeds to the satisfaction of the complainant’s mortgage. They are beyond the jurisdiction and control of the court.* All that the court can effect, and all that the defendant as surety can ask is, that upon the payment of the mortgage debt, he should be subrogated to the rights of the complainant, and be entitled to the securities which he holds for the payment of the debt, or to an equivalent reduction upon the amount secured by the mortgage. In other words, the mortgagor, as surety, would be entitled, upon payment of the mortgage debt, to have the mortgage for the Wisconsin lands transferred to him from the mortgagee, or, if that cannot be done, to have the value of those lands deducted from the mortgage debt. It appears, from the evidence, that upon the failure of the house of Oarhart & Oo. they were largely indebted to the house of Hopkins, Hays, Palmer & Oo., the parties really interested as mortgagees under Whyte’s mortgage; that judgments were recovered by the assignees of that firm against Oarhart and Whyte to an amount exceeding $4000; and that the lands at Mack'ford belonging to the firm, by way of compromise, were taken and accepted *285 in satisfaction of those payments. By this transaction, a large amount of the indebtedness of the firm was extinguished by the transfer of property of comparatively small value. The arrangement was highly advantageous to the interests of the partners, and if made without the direct assent of Whyte, the mortgagor, it has enured to his benefit. A large amount of his indebtedness as a partner of the firm has been satisfied; and enjoying that benefit, he cannot in equity ask that the value of the property thus appropriated should be held liable for the satisfaction of his mortgage debt. Eor can it escape attention, in considering the equitable title of the mortgagor to indemnity out of the property of the firm, that he received from his partner funds to the value of $1800, to be applied to the claims of the mortgagees, which he refused to pay over, and appropriated to his own use. There is no equity in the defence.
I have considered the case as though the bill were filed by the mortgagee, and the defence were raised by Whyte, the mortgagor. The assignee of the mortgage it is admitted stands in the shoes of the mortgagee. He is virtually a trustee for him. And the purchaser of the equity of redemption, if at all entitled to avail himself of the benefit of the defence, can stand in no better situation than the mortgagor. It is unnecessary, therefore, to consider the question, whether Crawford, the defendant, is or is not a bona ficle purchaser from Whyte, or whether he holds the property in trust for him.
The complainant is entitled to a decree and a dissolution of the injunction heretofore issued to restrain proceedings at law.

 On this point see Hayes v. Ward, 4 Johns. Ch. R. 123.